## Case No. 4,883.

### FLORENCE SEWING MACH. CO. v. GROVER & BAKER SEWING MACH. CO. et al.

[Holmes, 235.] [1]

Circuit Court, D. Massachusetts. Aug., 1873.

E. R. Hoar and A. L. Soule, for plaintiff.

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

B. R. Curtis, J. G. Abbott and Elias Merwin, for defendants.

SHEPLEY, Circuit Judge. The second section of the third article of the constitution extends the judicial power of the United States to controversies "between citizens of different states." There are no words in this grant of judicial power restricting it to controversies in which citizens of different states are the sole parties. Nor are there to be found any words of limitation which would deprive congress of the power to confer upon the federal courts jurisdiction over a judicial controversy between citizens of different states arising in a suit or case, although all the persons constituting the party on one side of the case were not citizens of states different from the states of which the persons composing the other party to the suit or case were citizens. The judicial controversy contemplated by the constitution is not limited to one in which citizens of different states are exclusively interested. The grant of jurisdiction is not over "suits" or "cases" between citizens of different states, but over "controversies" between citizens of different states. Whenever, therefore, a case or suit is pending, in which there is involved a judicial "controversy" between citizens of different states, the case is one coming clearly within the terms of the constitutional grant of judicial power, although in the same case there may be a controversy between citizens of the same state. In all the debates in the convention which framed the constitution, it seems to have been admitted by all the members of the convention that the jurisdiction of the national judiciary should embrace every subject which might endanger the national peace, by reason of the relations of the respective states to each other, and of their citizens to the citizens of other states. Before the conclusions of the convention had been reduced to the form of a written constitution, a resolution had unanimously passed the convention. "That the jurisdiction of the national judiciary shall extend" (among other things) to "questions which involve the national peace or harmony."

"Nothing," says Mr. Justice Story, "can conduce more to general harmony and confidence among all the states than a consciousness that such controversies are not exclusively to be decided by state tribunals, but may, at the election of the party, be brought before the national tribunals." "And if justice should be as fairly and as firmly administered in the former as in the latter, still the mischiefs would be most serious, if the public opinion did not indulge such a belief. Justice, in cases of this sort, should not only be above all reproach, but above all suspicion. The sources of state irritations and state jealousies are sufficiently numerous, without leaving open one so copious and constant as the belief or dread of wrong in the administration of state justice." "Probably (he subsequently remarks) no part of the judicial power of the Union has been of more practical benefit, or has given more lasting satisfaction to the people. There is not a single state which has not at some time felt the influence of this conservative power; and the general harmony which exists between the state courts and the national courts in the concurrent exercise of their jurisdiction in cases between citizens of different states, demonstrates the utility, as well as the safety, of the power. Indeed, it is not improbable that the existence of the power has operated as a silent but irresistible check to undue state legislation, at the same time that it has cherished a mutual respect and confidence between the state and national courts, as honorable as it has been beneficent."

This clause in the constitution was intend-

ed to protect citizens of different states from danger of injustice in the state courts, through local influence or prejudice. An interpretation is contended for, which would take from congress forever the power to legislate so as to bring under its protection citizens of other states, whenever the nature of the controversy required or permitted the joinder with them, as parties, of persons who were citizens of the same states as the person or persons composing the opposite party. Such a construction would manifestly impair the end which the clause was designed to attain. The basis of the Union is in the constitutional provision that "the citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states." It is essential to the upholding of any government that it should possess the power and the means of executing its own provisions by its own authority. To secure the inviolable maintenance of that equality of privileges and immunities guaranteed by the constitution to the citizens of the Union, it may be necessary, whenever a controversy arises in which one state, or its citizens, are opposed to another state, or its citizens, (whether the controversy be, or be not, exclusively confined to different states or the citizens of different states), to commit it to that tribunal, which, having no local attachments, will be likely to be impartial between the different states and their citizens, and which, owing its official existence to the Union, will never be likely to feel any bias inauspicious to the principles on which it is founded. How far congress will exercise this power of legislation must depend upon the state of the country, and such considerations as to the necessity for such legislation as have heretofore, or may hereafter, affect its action. Manifestly, thus far, congress has never deemed it necessary to exhaust the legislative power conferred upon it by this clause of the constitution. The twelfth section of the judiciary act (1 Stat. 79) authorized a removal to the circuit court of the United States, by a defendant, of any suit commenced in a state court against an alien, or by a citizen of the state in which the suit is brought against a citizen of another state, where the matter in dispute exceeds the sum of five hundred dollars. Under this section, it was held, that a cause could not be removed except upon the petition of all the defendants; that to bring the case within the act, all the plaintiffs must be citizens of the state in which suit is brought, and all the defendants must be citizens of some other state or states. Smith v. Rines [Case No. 13,100]; Hubbard v. Northern R. Co. [Id. 6,818]; Beardsley v. Torrey [Id. 1,190]; Ward v. Arredondo [Id. 17,148]; Strawbridge v. Curtiss, 3 Cranch [7 U. S.] 267. These cases all turned on the construction of the words used in the eleventh and twelfth sections of the judiciary act, not on the construction of the clause of the constitution conferring judicial power. As the eleventh section of the act of congress, in prescribing the jurisdiction of the circuit court, had limited it to cases "where the suit is between a citizen of the state where the suit is brought and a citizen of another state;" and the twelfth section had limited the right of removal to the circuit court to a "defendant in any suit commenced in a state court against an alien, or by a citizen of the state in which the suit is brought against a citizen of another state;" the courts held these expressions to mean that each distinct interest should be represented by persons all of whom are entitled to sue, or be sued, in the federal courts. In the language of Chief Justice Marshall: "That is, where the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued, in those courts."

The modification of the jurisdiction conferred by the eleventh section, subsequently made by the act of February 28, 1839, it is not necessary here to consider. Then followed the act of July 27, 1866 (14 Stat. 306), entitled "An act for the removal of causes in certain cases from the state courts." This act applies to suits "commenced in a state court against an alien, or by a citizen of the state in which the suit is brought against a citizen of another state." It contemplates suits in which the plaintiff is a citizen of the state in which the suit is brought, and in which there are several defendants, some residing in the state in which the suit is brought, and some, either aliens or citizens of a state other than that in which the suit is brought. "If the suit, so far as relates to the alien defendant, or to the defendant who is the citizen of a state other than that in which the suit is brought, is, or has been, instituted or prosecuted for the purpose of restraining or enjoining him, or if the suit is one in which there can be a final determination of the controversy, so far as it concerns him, without the presence of the other defendants as parties in the cause, then, and in every such case, the alien defendant, or the defendant who is a citizen of the state other than that in which the suit is brought, may, at any time before the trial or final hearing of the cause, file a petition for the removal of the cause, as against him, into the next circuit court of the United States to be held in the district where the suit is pending." Upon the filing of this petition and giving the security required by the statute, the state court is to proceed no further in the cause as against the defendant so applying for its removal. But "such removal of the cause, as against the defendant petitioning therefor, into the United States court, shall not be deemed to prejudice or take away the right of the plaintiff to proceed at the same time with the suit in the state court, as against the other defendants, if he shall desire so to do." Before the passage of this act, no removal could be made

in the causes to which the act applies, because all the defendants were not entitled to petition for removal, and the courts had decided that unless it was removable as to all, it was not so as to any. After the passage of the act of 1866, in certain cases the alien, or non-resident, defendant could have the cause removed as to him, while it was allowed to proceed in the state courts as to the resident defendants. But, as in the judiciary act, the right of removal was limited to the alien, or non-resident, defendant, and does not extend to the plaintiff.

Next followed the act of March 2, 1867 (14 Stat. 558), upon which the right of removal in this case is claimed. This act provides "that where a suit is now pending, or may hereafter be brought, in any state court in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, . . . such citizen of another state, whether he be plaintiff or defendant, if he will make and file in such state courts an affidavit stating that he has reason to believe, and does believe, that from prejudice or local influence he will not be able to obtain justice in such state court," may have the cause removed to the circuit court of the United States. This act purports to be an amendment of the act of July 27, 1866. It differs from all previous legislation of congress upon the subject of removal of suits in this respect; the previous acts referred to "suits between citizens of different states," which expression the courts had construed to be limited to suits in which all the persons constituting the party plaintiff were citizens of other states than those of which all the persons composing the party defendant were citizens, as we have before seen. The act of 1867, for the first time, uses the broader expression of the constitution, and refers to suits "in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state." It differs also from the prior acts in relation to removal, by using, as to the plaintiff, the language of the eleventh section of the judiciary act, instead of the language of the twelfth. The plaintiff may or may not be a resident of the state in which the suit is brought, and the right of removal of the suit is given to the non-resident citizen, be he plaintiff or defendant. The change of the form of expression from suits between citizens of different states to suits in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, was evidently made advisedly, and for the purpose of extending and enlarging the right of removal, not of limiting it, as would be the effect if the construction contended for were admitted. The only conditions requisite to the right of removal under the act of 1867 are: that in the suit pending in .the state court there shall be a controversy between a citizen of the state in which the suit is

brought and a citizen of another state; that the matter in dispute shall exceed the sum of five hundred dollars, exclusive of costs; that the citizen of such other state, either plaintiff or defendant, shall make and file the affidavit required by the statute; and that he shall give the requisite surety for appearing and entering the case in the circuit court at the proper time, with the copies of the papers in the case. .Johnson v. Monell [Case No. 7,399], opinion of Mr. Justice Miller; Sands v. Smith [Id. 12,305]. These requisites to the right of removal all exist, and have been complied with in the present case. The motion to dismiss for want of jurisdiction is therefore overruled.

Case to stand for trial.